UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIRROR WORLDS TECHNOLOGIES, LLC,

                    Plaintiff,

        - against -

FACEBOOK, INC.,

                    Defendant.

17-cv-3473 (JGK)

MEMORANDUM OPINION & ORDER

---

**JOHN G. KOELTL, District Judge:**

The plaintiff, Mirror Worlds Technologies, LLC ("Mirror Worlds"), filed this suit in the Southern District of New York against the defendant, Facebook, Inc. ("Facebook"), alleging that various features of Facebook's well-known social media website violate three patents owned by Mirror Worlds. Facebook has moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of California, where Facebook's headquarters is located. Mirror Worlds opposes the motion. For the reasons that follow, the motion to transfer is **denied**.

### I.

The relevant background facts, as alleged in Mirror Worlds's complaint and as contained in the affidavits, declarations, and exhibits submitted in connection with this motion, are as follows.

This case involves three patents that together allegedly protect a technology that organizes computerized information in

a searchable "time-ordered stream[]" rather than a "traditional folder and directory structure." Compl. ¶¶ 15, 16. The patents-in-suit are U.S. Patent No. 6,006,227 (the "'227 Patent"), U.S. Patent No. 7,865,538 (the "'538 Patent"), and U.S. Patent No. 8,255,439 (the "'439 Patent"). Compl. ¶¶ 7-9.

The protected technology was invented in the 1990s. Compl. ¶ 14. Dr. David H. Gelernter, a professor of computer science at Yale University, and Eric Freeman, then a Ph.D student studying under Dr. Gelernter, are named as inventors on all three of the patents-in-suit. Compl. ¶¶ 7-9, 10, 24. Two of the patents-in-suit also name Randy Prager, Peter Sparago, and Stephen Marcaurele as inventors. Compl. ¶¶ 8-9.

After 2001, an entity named "Mirror Worlds, LLC," a Texas limited liability corporation with its principal place of business in Texas, acquired exclusive ownership rights to the '227 Patent and related patents. See Damstedt Decl. Ex. F ¶¶ 1, 7-9. A separate entity named "Mirror Worlds Technologies, LLC." -- the plaintiff in the present action and the sole entity to which the Court refers as "Mirror Worlds" -- later acquired through assignment all rights, title, and interest to the '227 Patent. Damstedt Decl. Ex. E ¶ 6. Mirror Worlds also later acquired the same beneficial interest with regard to the '538 Patent and the '439 Patent. Compl. ¶ 6. The record does not

2

contain any evidence that Mirror Worlds or Mirror Worlds, LLC, ever practiced the patents-at-issue.

Mirror Worlds is a Texas limited liability corporation. Compl. ¶ 1. In 2013, Mirror Worlds's principal place of business was located in Tyler, Texas. Damstedt Decl. Ex. E ¶ 4. Today, Mirror Worlds has a place of business in New York City. Compl. ¶ 1. Mirror Worlds is a wholly owned subsidiary of Network-1 Technologies, Inc., which is a Delaware corporation with its principal place of business in New York City. Wang Decl. Ex. 6, at 17. Mirror Worlds has three officers, two of whom serve as the sole members of the board of directors. Wang Decl. ¶ 2. Corey Horowitz, president and a board member, resides in Westport, Connecticut, and works in New York City and New Canaan, Connecticut. Niv Harizman, vice president, secretary, and a board member, resides and works in Westport, Connecticut. David Kahn, treasurer, resides and works in Long Island, New York. Id.

On May 9, 2017, Mirror Worlds filed the present action against Facebook, alleging that Facebook's social media website infringes the patents-in-suit. See Compl. ¶¶ 57-85. Mirror Worlds accuses various aspects of the Facebook website of infringement, including features known as "News Feed," "Activity Log," "Events," "Graph Search," "Timeline," "Social Graph," and "TAO." Compl. ¶¶ 84-85.

3

Facebook is a Delaware corporation with its principal place of business in Menlo Park, California. Duffey Decl. ¶ 2. Many of Facebook's employees work at its Menlo Park headquarters. Duffey Decl. ¶¶ 2-4. Facebook also has at least one New York City office. Duffey Decl. ¶ 6. Although Facebook's New York City office is "growing rapidly," Wang Decl. Ex. 1 ("Duffey Dep."), at 126-27, Facebook employs far fewer people in New York than in Menlo Park. Duffey Decl. ¶ 6. In New York City, Facebook employs "engineers, data analysts, [and a] design team" for various products, as well as a "sales team, global sales operations, recruiting, creative design, human resources, facilities, [and a] culinary [team]." Duffey Dep. 126.

## II.

Facebook has moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of California. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no dispute that this action "might have been brought" in the Northern District of California.¹ Accordingly, the Court must determine whether a

---

¹ For the purposes of § 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction over the action and personal jurisdiction over the defendant, and if venue

4

transfer to the Northern District of California should be ordered "for the convenience of the parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a); see also Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 391 n.2 (S.D.N.Y. 2014).

The Court of Appeals for the Federal Circuit directs district courts to apply regional circuit law when deciding whether to transfer a patent infringement case pursuant to § 1404(a). Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003).

In the Second Circuit, the following seven factors guide a court's decision on a transfer motion:

> (1) [T]he plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).

In ruling on a motion to transfer under § 1404(a), a court should also consider the interest of the litigants and the public interest. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501,

---

would have been proper in the transferee court. Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004).

508 (1947); Ainbinder v. Potter, 282 F. Supp. 2d 180, 191 (S.D.N.Y. 2003). In determining whether to transfer venue, a court has "broad discretion" to consider "notions of convenience and fairness on a case-by-case basis," and the burden of establishing the propriety of a change of forum rests on the moving party. In re Cuyahoga Equip. Corp. v. Publicker Indus., Inc., 980 F.2d 110, 117 (2d Cir. 1992); see also Ainbinder, 282 F. Supp. 2d at 191. In allowing courts to transfer venue in the interest of justice, the statute uses "a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." Schneider v. H.A. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967) (Weinfeld, J.); see also Liberty Mut. Ins. Co., 17 F. Supp. 3d at 391-92.

### III.

After balancing the seven factors enumerated by the Second Circuit Court of Appeals and considering the interests of the parties and the public interest, the Court concludes that Facebook has failed to carry its burden to establish that this action should be transferred to the Northern District of California.

### A.

Mirror Worlds's choice of forum is entitled to deference.

A plaintiff's choice of forum is generally entitled to considerable weight on a motion to transfer pursuant to § 1404(a). D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006); see also Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 581 n.6 (2013) ("The Court must also give some weight to the plaintiffs' choice of forum."). This deference is enhanced when the plaintiff is a resident of the forum district and when there is a material connection between the underlying facts of the plaintiff's claim and the forum district. Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 232 (S.D.N.Y. 2003). But even when the plaintiff selects a forum that is not its home and that has only a tenuous connection to the dispute, a court will defer to the plaintiff's choice of forum if it appears that the plaintiff has not engaged in forum shopping and that its "choice of forum has been dictated by reasons that the law recognizes as valid." Children's Network, LLC v. PixFusion LLC, 722 F. Supp. 2d 404, 411 (S.D.N.Y. 2010) (quoting Iragorri v. United Techs. Corp., 274 F.3d 65, 71-72 (2d Cir. 2010)).

Mirror Worlds's forum choice is plainly entitled to deference. There is no indication that Mirror Worlds engaged in improper forum shopping. Rather, this District is a convenient forum for the officers and directors of Mirror Worlds, and some operative facts occurred in this District. Whatever the previous

7

location of Mirror Worlds or its alleged predecessors were, today Mirror Worlds and its parent company both have a substantial presence in New York City. Mirror Worlds is therefore entitled to deference on the basis of its connection to this District. Cf. TouchTunes Music Corp. v. Rowe Int'l Corp., 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009) (observing that courts have accorded a corporate entity's choice of forum particular deference when the entity's principal place of business is in the District).

Facebook argues that Mirror Worlds's forum selection should not be afforded deference because Mirror Worlds is a patent-holding company. In support of this argument, Facebook cites two cases from this District in which both (1) the plaintiffs were patent-holding companies and (2) the plaintiffs' claims "lack[ed] a meaningful connection to the Southern District of New York." IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co., No. 14-cv-4355, 2015 WL 4720293, at *8 (S.D.N.Y. Aug. 6, 2015); see Smart Skins LLC v. Microsoft Corp., No. 14-cv-10149, 2015 WL 1499843, at *5 (S.D.N.Y. Mar. 27, 2015) ("[T]he operative facts in this case occurred almost exclusively in the Western District of Washington, not this district. For this reason alone, I do not accord great deference to Smart Skin's choice of forum."). Those cases therefore do not stand for the broad proposition that a patent-holding company's choice of forum is never

8

entitled to deference, and they are distinguishable because there is a material connection between Mirror Worlds's claims and this District.

There is at least some material connection between this District and the patents-in-suit. While the technology at issue was not invented in New York, it was invented in nearby Connecticut. Moreover, all of the investment bankers and patent prosecutors who worked on acquiring and prosecuting the patents-in-suit are located in New York. Wang Decl. ¶ 4 & Exs. 2, 4, 20; see Children's Network, LLC, 722 F. Supp. 2d at 411-12 (deferring to the plaintiff's choice of forum in part because the patents-in-suit were prosecuted by attorneys located in this District).

There is also at least some material connection between this District and the accused technology. Facebook has at least one office in New York City, where some engineers work on some of the accused products. Duffey Dep. 78-79, 84-85, 87, 92-93, 104. There is some support for the proposition that Serkan Piantino, a former Facebook engineer who reportedly "played a major role" in developing News Feed and Timeline, moved to New York City at Facebook's direction in 2010 and worked on those products in New York. Wang Decl. Ex. 14. Mirror Worlds has also submitted evidence indicating that the engineering director in charge of creating Graph Search, another former Facebook

9

engineer named Lars Rasmussen, is currently located in Brooklyn, New York, which is located in the nearby Eastern District of New York. Wang Decl. Exs. 2, 16.

Facebook has submitted evidence of its substantial presence in the Northern District of California and the operative facts that are likely to have occurred in that District. A declaration signed by Michael Duffey, one of Facebook's in-house lawyers, states that a vast majority of the engineers who currently work on News Feed, Timeline, Activity Log, Events, and Graph Search are located at the Menlo Park headquarters. Duffey Decl. ¶¶ 10-11. Duffey also asserts that TAO, News Feed, Timeline, Activity Log, Events, and Graph Search were developed at "Facebook's Northern California headquarters." Duffey Decl. ¶¶ 8, 10-11. But Mirror Worlds need not establish that more operative facts occurred in this District to warrant deference for its choice of forum -- it need only establish "some material relation" between the underlying facts of its claim and the forum. See TouchTunes Music Corp., 676 F. Supp. 2d at 173-74. The evidence connecting Mirror Worlds's claims to this District satisfies that standard.

Accordingly, Mirror Worlds's selection of this forum is entitled to deference.

**B.**

The convenience of the witnesses and the parties, as well as the availability of compulsory process, all weigh against

transferring this case to the Northern District of California. The convenience of the witnesses is ordinarily the most important factor in § 1404(a) analysis. Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009).

The potential third-party witnesses in this case live much closer to this District than to the Northern District of California. Dr. Gelernter currently resides in Connecticut and has difficulty traveling far distances because he suffers from a disability. Wang Decl. ¶ 4. Prager currently resides in New York City. Wang Decl. ¶ 4. Sparago and Marcaurele are both residents of Connecticut. Wang Decl. ¶ 4.[2] Social media webpages submitted by Mirror Worlds as exhibits for purposes of this motion list Piantino's current location as New York, New York, and Rasmussen's current location as Brooklyn, New York. Wang Decl. Ex. 2, at 9, 12.

It would be much more convenient for these third-party witnesses to travel to this District than to the Northern District of California. And in the event that any of these witnesses are unwilling to testify, this Court would have the power to issue a subpoena compelling their attendance, whereas a

---

[2] The record does not reveal the current residence of Eric Freeman, but the parties represent that Dr. Freeman lives in Austin, Texas, which is roughly equidistant from New York City and Northern California.

11

district court in the Northern District of California would not. See Fed. R. Civ. P. 45(c)(1). The convenience to third-party witnesses therefore weighs heavily against transfer.

The location of the potential party witnesses varies. All of Mirror Worlds's officers live and work in either New York or Connecticut. Wang Decl. ¶ 2. As noted above, some Facebook engineers who currently work on some of the accused features are located in New York City. Duffey Dep. 78-79, 84-85, 87, 92-93, 104. Far more Facebook engineers currently working on the accused features are located in Menlo Park. Duffey Decl. ¶¶ 10-11.

The location of Facebook's party witnesses is of limited significance to the transfer analysis in this case. Facebook is more than capable of transporting its Menlo Park employees to this District in the event that Facebook sought to call them to testify at trial. Indeed, courts in this District have routinely rejected arguments by large, multinational corporations that a case should be transferred to the District where most of the corporate employees are located. See, e.g., Tomita Techs. USA, LLC v. Nintendo Co., 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) ("[T]ravel has become cheaper and easier. Where multinational corporations compete over venue in cases that transcend borders, consideration of convenience to witnesses often devolves into an absurd comparison of the costs and durations of a few

flights."); Medien Patent Verwaltung AG v. Warner Bros. Entm't, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) (denying motion to transfer to location of where a party's employees are located because "employees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship" (quoting Race Safe Sys., Inc. v. Indy Racing League, 251 F. Supp. 2d 1106, 1111 (W.D.N.Y. 2003)) (alteration omitted)).

Indeed, it is plain that this District would be more convenient for Mirror Worlds's party witnesses than the Northern District of California. To the extent the Northern District of California would be more convenient for Facebook's party witnesses, that would simply be transferring inconvenience from Facebook to Mirror Worlds. That is not a basis to overcome Mirror Worlds's choice of forum. See, e.g., EasyWeb Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012) ("Where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." (internal quotation marks and alterations omitted)).

Accordingly, the convenience of the witnesses and the ability to compel any unwilling witnesses to testify both weigh against transferring this action.

13

## C.

The remaining considerations -- the means of the parties, the accessibility of records and evidence, the locus of operative facts, and the public interest -- weigh neither for nor against transfer, and therefore do not support overcoming Mirror Worlds's choice of forum.

Facebook concedes that the relative means of the parties is a neutral consideration.

With regard to the accessibility of records, Facebook asserts that its documentation and source code are managed at its Menlo Park headquarters, Duffey Decl. ¶ 3, but identifies no reason why the relevant documents and other forms of proof would not also be accessible in this District. Duffey Dep. 63-65, 71-72. It would not be a significant inconvenience to either party to transmit the relevant evidence electronically to this or any District. See, e.g., Tomita Techs. USA, LLC, 818 F. Supp. 2d at 772 ("[The defendant] almost certainly will not physically ship documents that relate to the design process from Japan to the trial court. Instead, it will scan those documents onto a computer, producing them with the click of a mouse in either New York or Washington.").

While Facebook's headquarters has always been located in Northern California, the locus of operative facts in this case is not clearly fixed there. Mirror Worlds and its predecessors-

14

in-interest, the inventors named in the patents-in-suit, the attorneys who have prosecuted the patents-in-suit, and those who played a role in the acquisition of the patents-in-suit are all located in this District or a nearby District. Relevant third-party witnesses are located in or around this District. Facebook has offices in this District. Evidence submitted in connection with this motion indicates that Piantino developed News Feed for Facebook while working in this District. The locus of operative facts consideration therefore does not support overriding Mirror Worlds's choice of forum.

Facebook asserts that Mirror Worlds should be amenable to litigate anywhere in the United States because in 2008, Mirror Worlds, LLC -- Mirror Worlds's predecessor-in-interest to the '227 Patent -- sued Apple, Inc., in the Eastern District of Texas for infringement of the '227 Patent, see Mirror Worlds, LLC v. Apple, Inc., 784 F. Supp. 2d 703 (E.D. Tex. 2011), and in 2013, Mirror Worlds sued Dell, Inc., Apple, Inc., and other technology companies in the Eastern District of Texas for infringement of the '227 Patent, see Mirror Worlds Techs., LLC v. Dell, Inc., No. 6:13-cv-941, 2014 WL 11268268, at *1 n.1 (E.D. Tex. Sept. 2014). That Mirror Worlds and its predecessor chose to bring two lawsuits in another District is not a basis for overcoming Mirror Worlds's right to choose this forum in this case.

15

Finally, the public interest considerations do not favor transfer. Facebook has identified no substantial administrative difficulties of maintaining this action in this District, nor is there any conflict of laws or legal expertise issue in this patent dispute.

Accordingly, these considerations do not weigh in favor of overcoming the deference accorded to Mirror Worlds's choice of forum and the other factors that weigh against transfer.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, Facebook has failed to establish that this case warrants a transfer to the Northern District of California, and its motion pursuant to § 1404(a) is **denied.** The Clerk is directed to close the motion at docket number 41.

**SO ORDERED.**

**Dated:** **New York, New York**
**November 20, 2017**

_____
John G. Koeltl
United States District Judge