UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRROR WORLDS TECHNOLOGIES, LLC, *Plaintiff*, vs. FACEBOOK, INC., *Defendant*. | CASE NO. 17-cv-03473-JGK **JURY DEMANDED** **FILED UNDER SEAL** |

**PLAINTIFF MIRROR WORLDS TECHNOLOGIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO EXCLUDE IMPROPER EXPERT TESTIMONY OF FACEBOOK'S EXPERT WITNESSES**

**TABLE OF CONTENTS**

I. THE COURT SHOULD STRIKE MR. GRAY'S OPINIONS REGARDING THE UNTIMELY-DISCLOSED SCHEDULE+ PRIOR ART ................................................................. 3

    A. Facebook's Invalidity Theory Disclosures Have Been Inadequate from the Beginning.... 4

    B. The Court Should Exclude Facebook's Late-Disclosed Reliance on Schedule+ ............... 6

II. THE COURT SHOULD EXCLUDE DR. BALAKRISHNAN'S IMPROPER AND INADMISSIBLE OPINIONS REGARDING PRIOR MIRROR WORLD ACCUSATIONS OR PRODUCTS.................................................................................................................................... 7

    A. Dr. Balakrishnan's Opinions Regarding the "Summary of Mirror Worlds' Prior Infringement Accusations" Are Irrelevant and Prejudicial........................................................ 8

III. CONCLUSION................................................................................................................ 9

# TABLE OF AUTHORITIES

Cases

*Advanced Video Technologies LLC v. Motorola Mobility, LLC*,
   Case 1:12-cv-00918-CM-HBP, Dkt. 109 (S.D.N.Y. Jan. 22, 2015) ............................................ 6

*Frydman v. Verschleiser*,
   No. 14-cv-5903 (JGK)(JLC), 2017 WL 11555919 (S.D.N.Y. Mar. 27, 2017) .......................... 6

*JDS Therapeutics, LLC v. Pfizer Inc.*,
   No. 12 Civ. 9002 (JSR), 2013 WL 5548932 (S.D.N.Y. Sept. 30, 2013) ................................... 6

*Park West Radiology v. CareCore Nat. LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009) ..................................................................................... 9

*Regalado v. Ecolab Inc.*,
   No. 14-cv-6020 (LGS), 2016 WL 94139 (S.D.N.Y. Jan. 7, 2016) ........................................... 6

*Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   354 F. Supp. 508 (S.D.N.Y. Jan. 31, 2019) ............................................................................. 6

*SRI Intern. v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985) ................................................................................................ 8

*Tchatat v. City of New York*,
   315 F.R.D. 441 (S.D.N.Y. July 14, 2016) ................................................................................ 7

*Tramontane v. Home Depot U.S.A., Inc.*,
   No. 15-CV-8528 (NSR), 2018 WL 4572254 (S.D.N.Y. Sept. 24, 2018) .................................. 7

Rules

Fed. R. Evid. 401 ............................................................................................................................ 7, 8
Fed. R. Evid. 403 ............................................................................................................................ 7, 8
Fed. R. Evid. 702 .................................................................................................................... 3, 7, 8, 9

The Court should exclude improper and irrelevant expert testimony proffered by Facebook's experts, Mr. Stephen Gray and Dr. Ravin Balakrishnan. First, Mr. Gray also offers expert opinions regarding obviousness combinations that include Schedule+, a previously undisclosed prior art reference. Because Facebook failed to timely disclose this reference, despite repeated opportunities to do so, reliance on Schedule+ should be precluded. Second, Dr. Balakrishnan, Facebook's expert on infringement, offered what he calls a summary of accusations of the asserted patents against Apple and Microsoft in earlier, different cases. This type of expert testimony should be excluded as irrelevant, prejudicial and inconsistent with FRE 702. The prior accusations by a predecessor to the patents, against different parties and accused products, are not relevant to the issue of infringement or validity in this case. Further, injecting this type of irrelevant information would be prejudicial and confusing to the jury.

## I. THE COURT SHOULD STRIKE MR. GRAY'S OPINIONS REGARDING THE UNTIMELY-DISCLOSED SCHEDULE+ PRIOR ART

For the first time, on December 22, 2020, Facebook disclosed that it would rely on Schedule+, a calendar scheduling software, as part of its invalidity theories, by disclosing the opinion in Mr. Gray's expert report and by producing material related to the prior art on the same day. Facebook did not disclose this reference at any point in its L.P.R. 7 invalidity contentions nor did it disclose it in any contention interrogatories on Facebook's invalidity theories. This disclosure, which came nearly two months after the October 30, 2020 end of fact discovery, was untimely and improper. The remedy for this failure is to strike the portions of Mr. Gray's expert report that relies upon Schedule+, which are paragraphs 261-262 of his main report (Ex. 1) and the following appendix pages: Appendix A4, pages 60-67, Appendix A5, pages 57-64, Appendix B4, pages 25-31, Appendix B5, pages 31-37, Appendix B6(A), pages 65-71, Appendix B7(B), pages 62-68, Appendix C4, pages 53-59 and 132-138, Appendix C5, pages 56-62 and 122-129, Appendix C6(A), pages 91-97 and 178-185, and Appendix C7(B), pages 88-95 and 209-216 (attached collectively as Ex. 3, with dividing pages to identify each individual Appendix for reference).

## A. Facebook's Invalidity Theory Disclosures Have Been Inadequate from the Beginning.

Issues with Facebook's disclosure of its invalidity theories have plagued this case and MWT since nearly the beginning. On October 17, 2017, Facebook served its invalidity contentions as required under L.P.R. 7; Schedule+ was not listed as a prior art reference. *See* Udick Decl. at ¶ 2. Shortly thereafter, MWT reviewed the contentions and raised issues with Facebook's failure to comply with L.P.R. 7, particularly that it failed to provide notice as to what combinations Facebook was asserting for its obviousness theories. For example, at the November 3, 2017 status conference, MWT addressed this dispute following letter to the Court, arguing that Facebook's expansive identification of prior art failed to provide notice to MWT of its invalidity theories. *See* Dkt. 81, Nov. 3, 2017 Status Conf. Tr. at 41:25-48:10.

As a result of the discussion, Facebook agreed to provide a spreadsheet that was meant to provide adequate disclosure of, for example, Facebook's obviousness combinations. *See id.* at 46:9-48:1. Facebook responded by providing amended invalidity contentions on November 17, 2017. Like its first set of invalidity contentions, Facebook failed to identify Schedule+ as a potential obviousness reference (or mention Schedule+ at all). *See* Udick Decl. at ¶ 3. These contentions were just as deficient as the first set, which MWT informed them of in a December 12, 2017 email. *See* Ex. 4, Dec. 12, 2017 Email from B. Wang to B. Damstedt.

After remand from the Federal Circuit, discovery proceeded until the close of fact discovery on October 30, 2020. At that time Facebook served its Second Amended Invalidity Contentions and on November 2, 2020, Facebook served its answers to Mirror World's Third Set of Interrogatories that included a contention interrogatory (Interrogatory No. 18) asking Facebook to disclose its invalidity theories. *See* Ex. 5 at 33-38. Notably, Facebook also inserted a table (at pages 37-38) identifying purported charts. But those charts were never served on MWT. *See* Udick Decl. at ¶ 9. The interrogatory responses do not identify Schedule+.

At that time, fact discovery closed and MWT had a complete disclosure as to the theories Facebook would rely on for trial—or so it thought. On December 22, 2020, Facebook served the

Opening Expert Report of Stephen Gray which, *for the first time in the case's three-year existence*, identified Schedule+ as an obviousness reference. At the same time, Facebook produced software and a video demonstration of Schedule+ that Mr. Gray relied on in full for his expert reports. *See* Ex. 6, Dec. 22, 2020 C. Reed Production Letter (discloses production date of bates range which includes each reference Mr. Gray relied on). Facebook was under a duty to produce this material as soon as it was available under at least MWT's Request for Production No. 64 which requested, in part "All documents and things that may constitute or relate to any prior art, or possible prior art, to the subject matter of any claim of the patents-in-suit." *See* Ex. 9 (excerpt of Facebook's Responses to MWT's First Set of Requests for Production).

As shown by Mr. Gray's screenshots in the identified appendicies of Ex. 3, the system time and date of the demo was December 18, 2018. This would suggest that Facebook had prepared this information well before the December 22, 2020 date. During deposition, Mr. Gray testified:

> **Q.** Did you notice that the date and time for the Schedule+ was back in 2018?
> **A.** I was – I thought it was 2017. But I don't – no, I don't. I'm not – I don't remember the date off the top of my head, no.
> **Q.** Do you know why Schedule+ wasn't isntalled so that it was running off the current date and time? I assume you didn't set this up in 2018; right?
> **A.** No. I don't know. My rec – I think we probably set the date on the system.
> **Q.** And so why did you guys backdate it like that?
> **A.** Well, it was one – it was one of the systems where it was that particular implementation and when that implementation was available; right? I mean, tht was so – and, then, we're just trying to be realistic about the whole thing.
> **Q.** So you don't – you don't know why the system date and time was set for December of 2018?
> **A.** Other than to just be realistic about it.
> **Q.** What do you mean by realistic about that?
> **A.** Well, it's –the dates that were set were dates that were related to when the case first started. And so we're just trying to be realistic about what we would have done had it been at the time and so on. I think that was primarily the driver. But we were just trying to give a more realistic picture of what was going on. Could have set the dates for anything, I suppose.

Ex. 2, March 26, 2021 Gray Dep. Tr. 306:7-307:11.

Yet Mr. Gray's explanation of the date does not make sense. There is nothing of evidentiary value to the date of demo being at the beginning (or in this case, middle) of the case.

5

The priority date of relevance for prior art is far earlier. The most reasonable explanation is that Facebook had this information in its possession in 2018 and did not disclose it until Mr. Gray's expert report.

### B. The Court Should Exclude Facebook's Late-Disclosed Reliance on Schedule+

"The decision to strike an expert disclosure is entrusted to the discretion of the . . . court." *Regalado v. Ecolab Inc.*, No. 14-cv-6020 (LGS), 2016 WL 94139, at *2 (S.D.N.Y. Jan. 7, 2016). As this Court stated in upholding Magistrate Cott's order striking late-disclosed theories, "**Court-imposed deadlines matter.**" See *Frydman v. Verschleiser*, No. 14-cv-5903 (JGK)(JLC), 2017 WL 11555919, at *2 (S.D.N.Y. Mar. 27, 2017) (emphasis added). And courts in this district have done exactly what MWT asks.

In *JDS Therapeutics, LLC v. Pfizer Inc.*, for example, the court "grant[ed] [plaintiff's] motion to strike [from expert reports] any invalidity contentions that Pfizer did not previously disclose in the initial or supplemental responses to JDS's contention interrogatories." See *JDS Therapeutics, LLC v. Pfizer Inc.*, No. 12 Civ. 9002 (JSR), 2013 WL 5548932, at *1 (S.D.N.Y. Sept. 30, 2013) (noting that the use of contention interrogatories to narrow the issues and get the case trial ready and they would thus frame the fact and expert discovery).

Likewise, the *Advanced Video Technologies LLC v. Motorola Mobility, LLC* court stated that it "will not, however, allow AVT to proceed on a theory that was never disclosed at all prior to the service of [the] expert report." *Advanced Video Technologies LLC v. Motorola Mobility, LLC*, Case 1:12-cv-00918-CM-HBP, Dkt. 109 at 5 (S.D.N.Y. Jan. 22, 2015) (courtesy copy attached as Exhibit 8). And, while there are other decisions in this district that have permitted late disclosures, *see, e.g. Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 508, 510-11 (S.D.N.Y. Jan. 31, 2019) (denying motion to strike after a supplemental invalidity contention and allowing extended discovery to remedy prejudice), no cases appear to deny a motion to strike where there is a lack of any supplementation prior to the expert discovery

(where Facebook would have had to show good cause to supplement) or where inadequate disclosures plagued the case as much as it did so here.

Facebook had numerous opportunities to produce or identify Schedule+ as a reference prior to its expert report disclosure. At each opportunity, it failed to do so. Court-imposed deadlines matter and these disclosures were meant to frame the fact and expert issues in the case. By failing to disclose until expert discovery, Facebook irreversibly prejudiced MWT by preventing it from prosecuting its case with an appropriate and fulsome disclosure by Facebook of its invalidity theories. Precluding this reference from Mr. Gray's report is an appropriate remedy for this failure and does not preclude Facebook from offering alternative, properly disclosed, theories on invalidity.

## II. THE COURT SHOULD EXCLUDE DR. BALAKRISHNAN'S IMPROPER AND INADMISSIBLE OPINIONS REGARDING PRIOR MIRROR WORLD ACCUSATIONS OR PRODUCTS

The Court's role as a gate keeper includes "determin[ing] whether a proffered expert meets the requirements of Fed. R. Evid. 702." *See Tramontane v. Home Depot U.S.A., Inc.*, No. 15-CV-8528 (NSR), 2018 WL 4572254, at *5 (S.D.N.Y. Sept. 24, 2018). "To do so, a district court must ensure 'that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). And "expert testimony which does not relate to any issue in the case is not relevant, and, ergo, not helpful." *Id.* This analysis includes "ascertain[ing] whether the testimony has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (internal quotations omitted). This means that, "[a]s with all testimony, the expert's testimony not only must be relevant under Fed. R. Evid. 401, but is also subject to exclusion under Fed. R. Evid. 403 where its probative value is substantially outweighed by the danger of unfair prejudice or other factors." *See Tchatat v. City of New York*, 315 F.R.D. 441, 444 (S.D.N.Y. July 14, 2016). The burden of proving admissibility lies

with Facebook. *See id.* Dr. Balakrishnan's testimony regarding prior accusations related to these patents are, as a matter of law, irrelevant to any issue in the case.

   A. **Dr. Balakrishnan's Opinions Regarding the "Summary of Mirror Worlds' Prior Infringement Accusations" Are Irrelevant and Prejudicial.**

Dr. Balakrishnan, Facebook's expert relating to the question of infringement and whom offered opinions on the same and regarding technical benefits and comparability, offered irrelevant and prejudicial (if permitted to remain) opinions and characterizations of prior assertions of the patents at issue. Specifically, in paragraphs 148-167, Dr. Balakrishnan summarizes his opinions regarding prior litigation and infringement claims between a predecessor owner of the patents (which also included the term Mirror Worlds in its name) and Apple and Microsoft. *See* Ex. 7 (Balakrishnan Report Excerpt). These opinions have no relevance to any issue in this case. Thus, they are not helpful to the fact finder and should be excluded under FRE 702.

It is black letter patent law that "[i]nfringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit." *See SRI Intern. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). As such, there is no relevance in comparing how the patents were previously asserted, against different parties, in different cases, involving different accused products, to how they are now asserted for purposes of infringement against a different party and different products. Instead, testimony that would compare prior accusations against MWT's accusations against Facebook would be highly prejudicial and likely to confuse the jury, and therefore would be inadmissible under FRE 401 and 403 and therefore should be excluded under FRE 702.[1] Courts in this district have excluded testimony about prior litigations because of the concern of prejudicial effects on the jury. *See Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 329-330 (S.D.N.Y.

---

[1] Because the portions of the report at issue have no admissible basis, MWT brings its motion now under FRE 702 for the Court to act as gatekeeper.

2009) (excluding evidence related to prior arbitration and other litigations as prejudicial and on other grounds).

During deposition, Dr. Balakrishnan testified that he did consider the Microsoft and Apple products "at a very high level relative to the . . . Facebook Products" and that he "talk[s] about that somewhere in [his] report," noting that "at a very high level" his opinion was that the "asserted patents are more relevant to the – or appear to be more relevant to the Microsoft and Apple products than they are to the Facebook products." *See* Ex. 10, Balakrishnan Mar. 23, 2021 Dep. Tr. at 218:2-11. The only discussion of the Microsoft and Apple Products in Dr. Balakrishan's report are in the sections that MWT seeks to exclude; they do not offer this comparative opinion (which would not be admissible, in any event, as discussed above). Moreover, Dr. Balakrishnan confirmed that he did not do any element-by-element comparison of the asserted claims to the licensed Apple or Microsoft Products. *See* Ex. 10, Balakrishnan Mar. 23, 2021 Dep. Tr. at 219:19-22. Instead, his undisclosed opinions regarding which products were more similar to the accused patents was based on "reading the specification . . . of the asserted patents and the claims . . . and the type of organization of, you know, desktop data that was much more relevant to the Apple and Microsoft products at the high level." *See* Ex. 10, Balakrishnan Mar. 23, 2021 Dep. Tr. at 219:19-22. This analysis is fundamentally flawed and does not comport to any acceptable methodology or relate to any issue in this case. Thus, to the extent that the paragraphs identified above are meant to support this comparison, they would only serve an inadmissible and methodologically flawed opinion. This, too, is a reason to exclude them.

In sum, Dr. Balakrishnan's opinions regarding the prior litigation have no relevance to any issue in the case and should be excluded under Fed. R. Evid. 702. For these reasons, the Court should exclude paragraphs 148-167 of Dr. Balakrishnan's Rebuttal Expert Report.

## III. CONCLUSION

For the reasons set forth above, Mr. Gray's opinions that rely upon Schedule+ (paragraphs 261-262 of his main report (Ex. 1) and the following appendix pages: Appendix A4, pages 60-67, Appendix A5, pages 57-64, Appendix B4, pages 25-31, Appendix B5, pages 31-37, Appendix

B6(A), pages 65-71, Appendix B7(B), pages 62-68, Appendix C4, pages 53-59 and 132-138, Appendix C5, pages 56-62 and 122-129, Appendix C6(A), pages 91-97 and 178-185, and Appendix C7(B), pages 88-95 and 209-216 (attached collectively as Ex. 3) should be stricken. Likewise, paragraphs 148-167 of Dr. Balakrishnan's Rebuttal Expert Report should be stricken.

Respectfully submitted,

DATED: May 20, 2021                **RUSS, AUGUST & KABAT**

*/s/ Steven J. Udick*
Marc A. Fenster (*pro hac vice*)
*mfenster@raklaw.com*
Benjamin T. Wang (*pro hac vice*)
*bwang@raklaw.com*
Minna Chan (*pro hac vice*)
*mchan@raklaw.com*
James S. Tsuei (*pro hac vice*)
*jtsuei@raklaw.com*
Steven J. Udick (*pro hac vice*)
*sudick@raklaw.com*
RUSS AUGUST & KABAT
12424 Wilshire Boulevard Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Charles R. Macedo (SBN 2328318)
*cmacedo@arelaw.com*
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
21st Floor
New York, NY 10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

*Attorneys for Plaintiff*
Mirror Worlds Technologies, LLC

**CERTIFICATION REGARDING WORD COUNT & FORMATTING RULES**

The undersigned certifies that Mirror Worlds' Motion to Exclude Improper Expert Testimony of Facebook's Expert Witnesses complies with the Court's formatting and word count rules. Mirror Worlds' brief contains 2,825 words, exclusive of the cover page, table of contents, table of authorities, and certifications of service and compliance.

              /s/ *Steven J. Udick*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 20, 2021. As such, this document was served on all counsel who have consented to electronic service on the date of filing.

*/s/ Steven J. Udick*